THE H. A. BAXTER.

(District Court, D. Connecticut. July 22, 1909.)

No. 1,580.

1. ADMIRALTY (§ 101*)—LIBEL—SALE OF VESSELS—DISTRIBUTION OF PROCEEDS—PRIORITY—SEAMEN'S WAGES—FEES AND COSTS.

Where a vessel is seized and sold under a libel, seamen's wages and preferred fees and costs are entitled to be first paid out of the proceeds.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 697; Dec. Dig. § 101.*]

2. SHIPPING (§ 62*)—MASTER—AUTHORITY.

In admiralty law, the master of a vessel is the agent of the owner, with authority to bind the ship for repairs and supplies ordered in a foreign port, which he does by ordering such repairs, etc., without other agreement.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 257–269; Dec. Dig. § 62.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. Maritime Liens (§ 69\*)—Sale of Vessel—Lien for Repairs—Decree.**
Where libelant had procured a decree pro confesso on default for necessary repairs to a vessel, ordered by the master while in a foreign port, for which the libelant had a lien, it was entitled to have the amount thereof allowed in full as a preferred claim out of the proceeds of the sale of the vessel.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 107; Dec. Dig. § 69.\*]

In Admiralty. On exceptions to the report of the clerk, as special master to state, marshal, and report claims under the twenty-fourth admiralty rule.

Fred P. Latimer, for John W. Burton and others.
Currier & Barnard, for Charles A. Borkholm and others.
John C. Geary, for Davis & Co.
Waller & Waller, for New London Marine Iron Works Co.
Hyland & Zabriskie, for Burt & Mitchell Co.
Carpenter, Park & Symmers, for Gardiner B. Reynolds Co. and another.
Schutz & Edwards, for Eastern Coal Co.
Wray & Callaghan, for Elmer A. Keeler.
Alexander & Ash, for Alex Miller and another.
Delagnel Berrier, for Hudson Oil & Supply Co.
Gross, Hyde & Shipman and Eugene D. Flanigan, for trustee.

PLATT, District Judge. This is not a pleasant case, and is full of tangles and knots. It grew out of the insolvency of the Robinson, Baxter & Dissosway Towing & Transportation Company, which formerly owned the steam tug Baxter. Losing its active manager by death, and a large fleet of vessels by storm, it became financially involved and went to the New York state courts for protection; but the creditors petitioned it into bankruptcy in the Southern district of New York, and later the entire matter went to the Northern district of New York, where a trustee was appointed, who is now looking after the affairs of the estate. About the time when troubles were beginning to reach the surface of things, the Baxter happened to be in New London, in this district, undergoing repairs. Creditors of the embarrassed company came down upon the poor steam tug like wolves upon a sheepfold. (I have used a milder comparison than the one which almost slipped off my pen.) Libels were filed in this court ad infinitum, if not ad nauseam.

After much manœuvering, which was unwarrantably extended by the actions of the New York creditors and the probable oversight of a New York judge, the tug was finally sold for $5,500, although a far better price would have been obtained if there had been no interference. The clerk has now, under our rule, found, marshaled, and reported the claims against the fund in the registry, and that report is before the court under exceptions from certain creditors. It will unduly extend this opinion to rehearse the various exceptions in detail, but they have been carefully examined. No one criticises so much of

---

the report as deals with seamen's wages and preferred fees and costs, and to that extent it is accepted at the outset.

There is then left for distribution a balance of $4,042.68. It is over the treatment of this balance that the contest rages. The clerk first charges the residue with the claim of the New London Marine Iron Works for repairs between December 23, 1907, and January 20, 1908, amounting, with costs, to $1,216.98. He finds that this claim covers the last repairs upon the tug, that they were made upon the credit of the vessel, that but for them the tug would have brought next to nothing at the sale, and, in short, that they are of the highest order of merit and entitled to precede the others. If the report is accepted in this respect, the fund will be reduced to $2,825.70, and the other claims which are entitled to rank as maritime liens must be prorated, so that it is essential to settle the status of the Marine Iron Works claim before going further.

Exceptions to the report on this claim have been filed right and left. The proctor for Hudson Oil & Supply Company thinks that the work was not done on the credit of the vessel, and, if it was, that the lien ought not to be carried beyond January 7, 1908 (the date when the marshal took possession). The proctor for Burt & Mitchell Company also objects to the right of lien in toto, and certainly to so much thereof as represents work done after an order to stop came from the trustee, or after the marshal took possession. The proctor for Borkholm, Central Coal Company, and North River Coal Company thinks that no right of lien existed. Proctor for the trustee of the bankrupt estate objects to everything in sight.

The clerk finds as a fact that the repairs were made upon the credit of the vessel, and that finding should not be disturbed, unless the proofs upon which he based his conclusion show plainly that he is wrong. The New London Marine Iron Works, libelant, had obtained upon default a decree pro confesso, and the petition upon which the decree was based contained an allegation that the repairs were furnished upon the order of the "master and agent of the owner of the tug." This language is not unusual in libels which are intended to claim a right of lien, and is, so far as I can understand, in no sense ambiguous. It refers to one person as doing the ordering, and calls him the "master and agent" of the "owner." In admiralty law the master is the agent of the owner, and, when he orders necessary repairs or supplies in a foreign port, the implication is that, if nothing more is said, he binds the ship. It is of the essence of seafaring business that this should be so.

With such an interlocutory decree on file, there was nothing left for the clerk to do except to compute the value of the service rendered, and to find the extent of the lien security, and assign it the position which it deserved. The other lienors had no right to dispute the libelant's right to hold the tug for services. If the law were not so, the question as to whom the services were rendered would be an open one, and the evidence shows that the master brought his tug to the libelants in a badly crippled condition and ordered the repairs. The owner was consulted later about the extent of the repairs, but such talk could not divest the libelants of their right of lien. The

repairs were essential to further navigation of the tug, and were charged on the books of the libelants directly to the tug.

When the master first approached the libelants, neither party may have known about the insolvency; but the bargain was about a disabled vessel in a foreign port in charge of the master, and the libelants could proceed upon the work with absolute safety, so far as what they did was necessary, and the only point in talking with the owner would be to settle the extent of that necessity. The work had not gone far before the libelants knew about the insolvency; but they kept along and put the tug in such shape that the marshal was able to get a reasonable sum for her at the sale. She would have been almost unsalable as a crippled and disabled hulk. The services were exceedingly meritorious, and it would be a perversion of justice if, upon technicalities, the libelants should lose the whole or a part of the reward which belongs to them.

It is not clear that the trustee ordered them to stop, and what they did while the marshal had possession brought a large return to the other creditors, some of whom have only themselves to berate for the delays in the sale, which resulted in a probable loss of over $2,000 to the registry fund. For these reasons, the report upon the claim of the New London Marine Iron Works is accepted.

Then there remains in the fund $2,825.70. In disposing of this balance the clerk has heard much testimony, and received additional evidence under commissions, and reports his conclusions upon a large number of claims which he finds ought to come in and be allowed to participate pro rata, since their aggregate amount is considerably larger than the balance to be distributed. He finds in this list that the claims of Hudson Oil & Supply Company and Burt & Mitchell Company have no right of lien back of May 2, 1907, the date of the beginning of the next claim. This cuts off $711.46 from the former and $266.46 from the latter. The date selected, the proctors for these libelants insist, is arbitrary and capricious, and not founded on reason. I am not sure that the reason for it is not as plain as that assigned for some of the settled rules in vogue in other districts, and it seems to coincide with the reasoning of the late Judge Townsend in The John T. Williams (D. C.) 107 Fed. 750. At any rate, it works out justice in this particular case, and must not be considered as a binding precedent. Some definite rule must be evolved and adopted before such a situation will exist.

The testimony adduced before the clerk regarding these claims has been examined with as much care as one's last efforts in hot weather permit, and I am bound to say that, except in so far as they may be governed by the defaults, it is not certain that either claim is entitled to be protected as a maritime lien. The situation, however, presents this apparently unsurmountable obstacle. If the report of the clerk in regard to them shall not be accepted, there will be no gain to the bankrupt estate, because the claims which have undisputed rights of priority are enough to practically absorb the fragment of the fund which has not hereinbefore been lawfully distributed. The prorated lienors have not disturbed themselves about these claims, but have left that burden upon the shoulders of the proctor for the trustee,

who, as it turns out, can hope to gain little, if anything, even should he succeed.

It is a curious circumstance that the proctors who fidget so much about the loss of a portion of their claims are, with the same breath, criticising without mercy the claim of the Marine Iron Works, because, as they insist, and again insist, those repairs were not done upon the credit of the vessel, but were the result of a bargain with the owner. Their own claims are weighted down by the same infirmity. They can see the mote in the Marine Company's eye, but ignore the beams in their own eyes. I am convinced that it will be an act of wisdom on the part of these belligerent proctors to accept with grace the more than half a loaf offered them by the clerk as master, even if his conclusions have been reached somewhat irregularly. If they continue their warfare, they may discover, when they open their hands at the end of it, that, while clutching at what they think is substance, they have in reality been grasping a shadow. After serious consideration, it seems to me that the facts leave the final conclusion in sufficient doubt, so that it is my duty to accept the report of the clerk on these claims.

Those who filed libels find fault with the clerk because he let in claimants against the proceeds who waited until after the sale. The clerk has acted in accordance with the rules of this district, and I can see no reason why the rule should be changed. It is not thought that a creditor waives his right of lien by not hurrying to pile up his libel on top of others which are amply sufficient to hold the ship and effectuate a sale. Such a rule might please proctors; but I cannot see how it could benefit any law-abiding, peace-loving citizen. If there shall arise in the district many such situations as the one in hand, a rule compelling litigants to pause before creating unnecessary expense would be more appropriate than the one suggested.

Exception is taken about the taxing of costs in advance of action by the court; but it strikes me that the fault-finding creditors have been treated with exceptional generosity in the report.

Let the final decree be prepared in accordance with the report.